## MIMMACK *v.* UNITED STATES.

Charges of drunkenness on duty having been preferred against A., a captain in the army, he proposed that if they should not be acted upon he would place his resignation in the hands of his commanding officer, to be held, and not forwarded to the War Department, if he should entirely abstain from the use of intoxicating liquors. Accordingly, May 10, 1868, he enclosed in a letter to that officer his resignation, stating that it was without date, and authorizing him, subject to the condition above stated, to place it in the hands of the department commander, to be forwarded to the War Department if he, A., should become intoxicated again. On A.'s again becoming intoxicated on duty prior to Oct. 3, 1868, the department commander, on being notified of the fact, inserted the date of the 5th of that month in the resignation, and duly forwarded it. On the 29th, it was accepted by the President, and the notification of his action thereon was received by A. Nov. 11. The President revoked his acceptance, Dec. 11 ; but no order promulgating the revocation, or restoring A. to duty, was issued by the War Department. Dec. 22, 1869, the Senate advised and consented to the appointment of B. to be a captain, *vice* A. resigned. *Held,* 1. That A., by voluntarily placing his resignation, without date, in the hands of his commanding officer, authorized him, upon his (A.) becoming again intoxicated, to insert a proper date in such resignation, and forward it for acceptance. 2. That A.'s office became vacant upon his receipt of the notification of the acceptance by the President of the resignation. 3. That the action of the President, revoking such acceptance, did not restore A. to the service.

APPEAL from the Court of Claims.

This was a suit brought Sept. 2, 1873, in the Court of Claims, by Bernard P. Mimmack against the United States, to recover pay and allowances as a captain in the army to that date from Dec. 11, 1868, amounting to $9,344.29. The court found the following facts : —

That in May, 1868, the petitioner, said Mimmack, was a captain of the thirtieth regiment of infantry, and brevet-major, on duty at Fort Sidney, which was under the command of General Potter.

Previous to the 10th of May, charges, with specifications of drunkenness on duty, &c., were preferred against the petitioner; and he then said that, on condition the charges should not be acted upon, he would place his resignation in the hands of General Potter, to be held by him, and not forwarded to the War Department, if he should entirely abstain from the use of intoxicating liquors; and on the 10th of May the petitioner enclosed his resignation to General Potter in a letter, stating that the resignation was without date, and authorizing General Potter to place it in General Augur's hands, to forward to the War Department, should he, the petitioner, ever become intoxicated again. General Potter sent the resignation and letter of the petitioner to General Augur, and informed him of the understanding had with the petitioner, as above stated.

Previous to Oct. 3, 1868, the petitioner having been again intoxicated on duty, and by excessive drunkenness confined to his bed in a state bordering on delirium tremens, General Potter placed him under arrest, and ordered him to turn over the company's property in his hands. By letter, dated Oct. 3, 1868, General Potter informed General Augur that the petitioner had again broke out drinking hard, and that he had placed him under arrest, and ordered him to turn over the company property.

On the 5th of October, General Augur forwarded the petitioner's resignation, with the date filled up "Oct. 5, 1868," to the War Department. This date was not filled up by the petitioner, nor was he informed of the communication by General Potter, nor of the fact that his resignation was to be forwarded to the War Department.

On the 29th of that month, the resignation was accepted by the President, to take effect from that date, and notice of the acceptance was sent to the petitioner, who received it Nov. 8. It was not shown that the President, at the time of accepting it, had been informed of the manner in which it had been lodged with General Potter, or of the fact that the date had been filled in by a third person, or of any of the circumstances connected with the resignation.

On the 18th of November, the President promoted First-Lieutenant Appleton D. Palmer to be " captain in the thirtieth regiment of infantry," "*vice* Mimmack, resigned;" and notice thereof was sent by letter to Captain Palmer, of that date, but he was not then commissioned.

On the 8th of December, the name of First-Lieutenant Palmer was placed on the list of nominations made by the President to be sent to the Senate.

On the 11th of December, ·the President, on the petitioner's application, revoked the acceptance of the resignation, and ordered him to duty, and notice thereof was given to the Secretary of War.

On the 12th of December, a report was made to the President of the facts of the case by the War Department, and on the 24th the report was returned to the Secretary of War by the President for action under the order of Dec. 11.

The report and the direction of the President were referred to the General of .the Army, who requested that, before an order was issued, the opinion of the Attorney-General might be obtained as to the legality of the President's revocation of his acceptance of the petitioner's resignation.

On the 30th of December, by the direction of the President, the name of First-Lieutenant Palmer was stricken from the list of nominations made by the President to be sent to the Senate, and the Secretary of War was notified thereof.

On the 4th of January, 1869, the case of the petitioner, with the papers relating thereto, was submitted by the Secretary of War to the Attorney-General, who, on the 4th of February, gave his opinion that the President's revocation of his acceptance of the petitioner's resignation had not the effect of restoring him to his former position in the military service.

On the 13th of February, the opinion of the Attorney-General and the papers containing the President's order were sent to the General of the Army; and he declined to permit his name to be used in promulgating the order, as in his opinion it was illegal, and he was sustained in that by the opinion of the Attorney-General.

On March 11, 1869, President Grant nominated First-Lieutenant Palmer to the Senate to be "captain, Oct. 29, 1868, *vice* Mimmack, resigned." The nomination was not acted upon. By letter of May 4, 1869, he was notified of his promotion by letter.

On the 6th of the following December, the President re-nominated Lieutenant Palmer to be "captain, Oct. 29, 1868, *vice* Mimmack, resigned;" and the Senate, on the 22d of that month, advised and consented to the appointment, agreeably to the nomination.

On the 19th of February, 1869, the petitioner enlisted in the marine corps, and served therein until the 27th of August, when he was transferred to the United States ship "Lancaster," and served as clerk, and then secretary to the commanders of squadrons, until May 22, 1872; and in the time specified he received as pay $2,344.09.

On the 2d of November, 1872, the petitioner was appointed a clerk in the Second Auditor's office, and served therein till Aug. 16, 1873, when he was appointed a clerk in the Fourth Auditor's office; and up to June 30, 1874, he had received pay as clerk as aforesaid to the amount of $2,082.49.

The Court of Claims dismissed the petition, and found as a conclusion of law that the revocation by the President of his acceptance of Mimmack's resignation, after notice to him of such acceptance, did not restore the petitioner to his post in the army.

Judgment having been rendered, Mimmack appealed here.

*Mr. Albert Pike* for the appellant.

Even if it be conceded that Mimmack did actually resign his commission, the President had the power, before the vacancy was filled, to recall or revoke his acceptance of the resignation. *Rex* v. *Mayor of Rippon*, 1 Ld. Raym. 563; s. c. 2 Salk. 433; *Montgomery* v. *United States*, 5 Ct. of Cl. 94.

The resignation of a civil officer takes effect when it is received by the appointing power. *United States* v. *Wright*, 1 McLean, 509; *Gates* v. *Delaware Co.*, 12 Iowa, 405; *People* v. *Porter*, 6 Cal. 26. But that of a military officer does not take effect until he has received notice of its acceptance. If he leaves his post without such notice, he renders himself liable to the penalties for desertion. 12 Stat. 316.

A prospective resignation is an intention, or at least a promise, to resign, which may be withdrawn before the time fixed; and where no new rights have intervened, it may, with the consent of the accepting party, be withdrawn even after it has been accepted. *Biddle* v. *Willard*, 16 Ind. 66. Before the President recalled his acceptance of Mimmack's alleged resignation, a letter of appointment had been sent to Palmer, but no commission was issued. The President's appointing power is only completely exercised when he performs the last act required from him : which is signing the commission, and causing to be thereunto affixed the seal of the United States. *Marbury* v. *Madison*, 1 Cranch, 137; *United States* v. *Le Baron*, 19 How. 73 ; *United States* v. *Bank of Arkansas*, Hemp. 460. And where a vacancy happens during the recess of the Senate, he can only fill it by granting a commission " which shall expire at the end of the next session." The letter of appointment was, therefore, an absolute nullity, conferring on Palmer no rights, and presenting no obstacle to the President's action in revoking his acceptance of a pretended resignation forwarded to him without Mimmack's knowledge.

There is no decided case which affirms that the resignation of an officer in the civil service, after it has been received by the appointing power, cannot, by the consent of the latter, be withdrawn. By the uniform practice of the government, from its origin, his relations to that service, after his resignation has been so withdrawn, remain the same as if it had never been sent. Such is the effect of the revocation of the acceptance of the resignation of an officer in the military or the naval service, if the office be not filled at the time of such revocation.

" The revocation of an order accepting the resignation of an

officer of the regular army is not in the nature of a new appointment, and upon such revocation the officer assumes his previous status and relative rank in his arm of the service, subject only to the loss of his pay and allowances for the period during which he was actually out of the service." Opinions of the Judge-Advocate-General of the Army, Official Record, vol. xix. p. 307; Digest of Opinions, 328; id. (ed. 1866) 210.

When, therefore, President Grant sent the name of Palmer to the Senate, Mimmack was in the service, and he could not be removed therefrom by force of an executive nomination, even if it was sanctioned by the Senate. No officer, in time of peace, can be dismissed from the military service, except pursuant to the sentence of a court-martial. 14 Stat. 92.

There never was any valid tender of a resignation. General Potter held the paper, not as the superior officer of Mimmack, but as his private agent, *pro hac vice*. Mimmack, five months before, had agreed that it should be forwarded as his resignation, if he should " ever become intoxicated again." Intoxication does not involve the forfeiture of an office. The agreement was therefore void, — a mere promise, without consideration; but if it absolutely bound him, his commission of the act, which was the condition precedent on which alone the paper could be sent, should have been established upon a trial, after due notice to him.

The paper was not an escrow; because a deed is such only when its delivery is dependent on something to be done by the person therein named as grantee. If the maker has a right to reclaim it, it is no escrow.

Captain Mimmack having never been out of the service, his place was not lawfully filled by another, and he is entitled to his pay and allowances, for which this suit was brought.

*The Attorney-General, contra.*

1. The contingency having happened upon which, by the express authority of Mimmack, his resignation in writing was to be forwarded, its transmission to the War Department was, in law, his own voluntary act.

2. On his receiving through the appropriate channel a notice of the President's acceptance of that resignation, his connec-

tion with the military service of the United States terminated, and the right of Palmer to promotion at once accrued.

3. The President's subsequent. attempted revocation of his acceptance could not defeat that right, nor work Mimmack's restoration. *Dubarry's Case*, 4 Op. Att'y-Gen. 124; *Whitney's Case*, id. 277; *Kendall's Case*, id. 306; *Downing's Case*, 7 id. 99. The latter result could only be accomplished by an appointment by the President, by and with the advice and consent of. the Senate.

4. The appointment by the President and Senate of Palmer as captain, *vice* Mimmack, resigned, would seem of itself to be conclusive as to the status of the latter. At all events, in this suit their action cannot be set aside, nor can his claim to the captaincy be asserted adversely to the right of another, who holds the commission.

5. That action, if subject to judicial review, must be declared unlawful and void, and Mimmack's title established in a direct proceeding, before a suit for the pay and emoluments of the office can be maintained.

MR. JUSTICE CLIFFORD delivered the opinion of the court.

Nothing short of a written resignation to the President, or the proper executive department, by a commissioned officer of the army, navy, or marine corps, and the acceptance of the same duly notified to the incumbent of the office, in the customary mode, will of itself create a vacancy in such an office, or prevent the incumbent, if the President consents, from withdrawing the proposed resignation; in which event the rights, privileges, duties, and obligations of the officer remain just as if the resignation had never been tendered.

Prior to notice that the resignation tendered has been accepted by the President, the officer in such a case may not without leave quit his post or proper duties, nor is he deprived of any of the rights or privileges conferred and enjoyed by virtue of his appointment and commission.

Charges, with specifications of drunkenness on duty, were made to Brevet-Brigadier-General J. H. Potter, commanding Fort Sedgwick, against the petitioner; and the record shows that the petitioner proposed to that officer that, on condition

that the charges should not be prosecuted, he, the petitioner, would place his resignation as captain and brevet-major in the hands of the officer to whom the charges were preferred, to be held by him and not to be forwarded to the War Department if he, the accused, should thereafter entirely abstain from the use of intoxicating liquors; and that on the 10th of May, 1868, the petitioner enclosed his resignation, addressed to the adjutant-general of the army, in a letter to the officer commanding Fort Sedgwick, stating that the resignation was without date, and authorizing the party to whom the letter was addressed to place the resignation in the hands of the department commander, to be forwarded to the War Department should he, the petitioner, ever again become intoxicated.

Pursuant to the request of the letter and the authority it conferred, both the letter and the resignation of the petitioner were forwarded to the commander of the department, who was fully informed of the purpose for which the documents were forwarded.

Previous to October in the same year, the petitioner again became intoxicated on duty, and was by such continued excesses confined to his bed in a state bordering on delirium tremens, in consequence of which the commander at Fort Sedgwick placed him under arrest, and ordered him to turn over the property of the company in his hands, as therein directed. Due notice that the petitioner had again " broke out hard drinking," and that he had been placed under arrest and ordered to hand over the company property, was given to the department commander on the same day. Two days later, the department commander forwarded the resignation of the petitioner, with the date filled up, Oct. 5, 1868, to the War Department; but the finding of the court below shows that the date of the resignation was not filled up by the petitioner, nor was he informed of the communication sent to the department commander, nor of the fact that his resignation was to be forwarded to the War Department. On the 29th of the same month, the resignation of the petitioner was accepted by the President, and notice to the petitioner of that date of such acceptance was duly forwarded, which, as the findings of the subordinate court show, was received by him on the 8th of November following.

By those proceedings it was at the time supposed that a vacancy was created, and ten days subsequently the President promoted First-Lieutenant Appleton D. Palmer to be captain in the thirtieth regiment of infantry, *vice* Bernard P. Mimmack, resigned, and notice thereof was sent by letter to the appointee of that date, but he was not then commissioned. On the 11th of December following, the President, on the application of the petitioner, revoked his acceptance of the resignation of the petitioner, and ordered him to duty, and notice thereof was given to the Secretary of War.

Proofs having been taken, the parties were heard; and the court rendered judgment that the petition should be dismissed, the conclusion of law adopted being that the revocation by the President of his acceptance of the petitioner's resignation, after due notice to the petitioner of such acceptance, did not restore the petitioner to the army. From which judgment the petitioner appealed to this court.

Full pay and allowances are claimed by the petitioner from the 11th of December, 1868, to the date of the judgment, amounting to the sum of $9,344.29, as appears by the statement of his account annexed to his petition.

Three principal errors are assigned: 1. That the court erred in holding that the revocation by the President of his acceptance of the supposed resignation of the petitioner, after the petitioner was notified of such acceptance, did not restore him to the army. 2. That the court erred in holding that the petitioner did in fact resign his office as captain in the army, and that the writing signed by him and shown in the record was in law and fact his resignation. 3. That the court erred in holding that by the said paper coming to the hands of the President and his acceptance of it as a resignation, and notice of such acceptance to the petitioner, he ceased in law to be an officer in the army of the United States.

Attempt is made to support these several propositions by the facts exhibited in the findings of the court below, in addition to those already reproduced, from which the petitioner insists that the court here may decide that the petitioner never resigned his commission, and that the office he held under it never became vacant.

On the next day after the President revoked his acceptance of the resignation of the petitioner, a report of the facts of the case was made to the President by the War Department; and on the 24th of the same month the report was returned by the President to the Secretary of War, for action under the prior order of the President, when the report and the direction of the President were referred to the General of the Army. Due consideration having been given to the matters so referred to him, the General of the Army requested that before an order was issued the opinion of the Attorney-General might be obtained as to the legality of the President's revocation of his acceptance of the petitioner's resignation.

On the 13th of the same month, the name of Appleton D. Palmer, previously placed on the list of nominations as first lieutenant, was, by the direction of the President, stricken from the list of nominations to be sent to the Senate, and the Secretary of War was duly notified of that fact.

Pursuant to the request of the General of the Army, the case of the petitioner, with the papers relating thereto, were, on the 4th of the succeeding month, submitted by the Secretary of War to the Attorney-General, who subsequently gave it as his opinion that the President's revocation of his acceptance of the petitioner's resignation did not have the effect of restoring him to his former position in the military service. *Mimmack's Case*, 12 Op. Att'y-Gen. 555.

Without much delay, the opinion of the Attorney-General and the papers containing the order of the President were sent to the General of the Army, and he declined to permit his name to be used in promulgating the order, as he was of the opinion that it was illegal, and concurred with the Attorney-General.

All the proceedings thus far in the case took place during the administration of President Johnson. On the 11th of March, 1869, President Grant nominated First-Lieutenant Appleton D. Palmer to be captain, Oct. 29, 1868, *vice* Bernard P. Mimmack, resigned; but the Senate did not act on the nomination, and it was renewed on the following December, and on the 22d of the same month the nomination was confirmed by the Senate.

Four principal questions arise in the case, and it is clear that, if they are all decided adversely to the petitioner, the judgment of the court below must be affirmed. They are as follows: 1. Did the petitioner resign, as found by the Court of Claims? 2. Did the President accept his resignation, and cause him to be notified of the acceptance of the same? 3. Could the President revoke his acceptance of the petitioner's resignation, after having given him notice that it was accepted? 4. Is there any thing in the other facts found by the court below to show that the resignation as accepted was ever legally revoked or rendered inoperative?

Sufficient appears to show that the resignation without date was written by the petitioner, and that it was enclosed by the petitioner in a letter and sent to the commander at Fort. Sedgwick, with the request to place it in the hands of the department commander, to be forwarded to the War Department should he, the petitioner, ever again become intoxicated. Beyond all question, the resignation, voluntarily written and signed by the petitioner, together with the letter enclosing the same, was placed in the hands of the department commander pursuant to his request, with directions that it should be forwarded to the War Department in case he should ever again commit the offence described in the charges previously preferred against him by the commander of Fort Sidney.

Nor does it make any difference that the resignation was without date, as it is a clear legal proposition that the petitioner, by placing the resignation in the hands of the depositary, with power to forward it to the War Department in the event described, authorized the holder, upon the happening of the event, to fill up the date; and the subsequent conduct of the petitioner supports the conclusion that the depositary did not exceed his authority.

Viewed in the light of these suggestions, it is clear that the delivery of the resignation must be regarded as of the same validity as it would have had if the blank date had been filled up by the petitioner, and he had personally transmitted it to the War Department. Opposed to that is the suggestion that the transaction is one of an unusual character; but the answer to that is that the proposition came from the petitioner, and

that it does not lie with him to call in question either its propriety or validity.

Argument to show that the President did accept the resignation and notify the writer of the same that it had been accepted is unnecessary, as both facts are embraced in the findings of the court below; nor was any attempt made in argument to deny that the evidence justified the findings.

Officers of the kind are nominated by the President and confirmed by the Senate; and if the petitioner ceased to be such an officer when notified that his resignation had been accepted, it requires no argument to show that nothing could reinstate him in the office short of a new nomination and confirmation. Prior to the act of the 13th of July, 1866, the President could dismiss an officer in the military or naval service without the concurrence of the Senate, but he never could nominate and appoint one without the advice and consent of the Senate, as required by the Constitution. *Dubarry's Case*, 4 Op. Att'y-Gen. 603; 14 Stat. 92.

Since the passage of that act, the President cannot dismiss such an officer in time of peace, and certainly no vacancy in such an office can be filled without the advice and consent of the Senate; from which it follows that the opinion of the Attorney-General, that the subsequent action of the President did not restore the petitioner to the military service, is correct. 12 Stat. 316.

Concede that, and it follows that the office became vacant when the incumbent was notified that his resignation had been accepted, and that the new appointment was in all respects regular when confirmed by the Senate.

Decided support to that conclusion, if any be needed, is derived from the subsequent findings of the court below, from which it appears that the petitioner, on the 19th of February, subsequent to the confirmation of the new appointee to the office in question, enlisted in the marine corps, and that he remained in that situation until his compensation amounted to $2,344; and that he was subsequently appointed a clerk in the Treasury Department, and that he served there in different capacities until his compensation amounted to more than $2,000 in addition to what he had previously received for his services in the marine corps.

For these reasons the court is of the opinion that the subsequent action of the President did not restore the petitioner to the military service, and that his claim was rightly rejected.

*Judgment affirmed.*