Weldon, J.,
delivered the opinion of the court:
The controversy in this case involves the question whether the President, after directing that an officer of the Army u be wholly retired from the service with one year’s pay and allowance,” upon the report of a retiring board, that the officer is incapacitated for active service, and that the incapacity resulted from sickness not incident to the service; and after the appointment of his successor, by and with the advice and consent of the Senate, can order a rehearing, and upon a similar report change the legal status of the person and place his name on the list of retired officers. ■
It is insisted by the claimant that such a power is inherent in the President;' and upon that theory of the law he brings this suit, for a balance due him as longevity pay of $2,800.
On the other side it is contended that such an exercise of authority is unlawful; that all the money paid to the officer, as of the “ retired pay list,” is illegal, and the defendants have filed a counter-claim demanding the sum of $17,367.47. There is no controversy as to the facts, which may be stated briefly as follows:
On October 20,1864, the petitioner, was appointed second lieutenant in the Army; and on the 18th of November, 1864, was promoted to the rank of first lieutenant, to take effect from the 20th of October preceding. Séptember 21, 1867, a retiring board was ordered to convene, before which, on October 2, 1867, claimant appeared, the board on the same day reported him incapacitated for active duty, and that such incapacity was not from causes incident to the service.
October 12,1867, the President approved the finding of the board, directed that the claimant “ be wholly retired from the service with one year’s pay and alloawnce, and that his name be henceforward omitted from the Army Register.”
*348 November 12, the President promoted Joel H. Lyman to the rank of first lieutenant, to take effect from October 12, in the place of claimant, wholly retired; on the 14th of February, 1868, the Senate confirmed the nomination of Lyman, and on 7th of June following he was commissioned to date from the 12th of October, 1867.
The claimant being dissatisfied with the finding of the board and the action of the President thereon, was ordered to appear again before the board, which he did, with the same result.
Upon the second finding the Surgeon-General certified in substance (notwithstanding the result of both examinations) that the claimant’s sickness was incident to the service; thereupon the President, on the 28th of September, 1868, revoked the order of October, 1867, and directed that his name “ be placed upon the list of retired officers.”
The theory of the claimant is, that the President, notwithstanding his approval of the first finding, had authority to supervise his action in the premises, in order that there might be secured to officers the benefit of a “ fair and full hearing,” as provided in section 17 of the Act of August 3, 1861, 12 Stat. L., 289.
The proviso to said section reads as follows :
“Provided always, That the members of the board shall in every case be sworn to an honest and impartial discharge of their duties, and that no officer of the Army shall be retired either partially or wholly from the servic'e without having had a fair and full hearing before the board, if, upon due summons, he shall demand it.”
This proviso simply makes clear by direct statement, what is implied in the other section of the statute providing for, and regulating an examing board; it being the purpose and policy of the law, to secure to the officer u a fair and full hearing ” before his relations to the Army can be disturbed, or dissolved.
But does it give to the President jurisdiction of, and control of the record, of a case, when he has acted on the report of the board by directing and ordering that the officer “ by wholly retired from the service, and after the nomination and confirmation of his successor?
Did he not, when he examined the first report, determine that the officer had received “a fair and full hearing” ?
*349 The President must have done so, for the reason that such determination must he assumed, as the basis of his order retiring the claimant “ wholly from the service.”
Upon the first order of the President there was in law and fact a vacancy in the office of first lieutenant, and the legal status of the claimant was that of a private citizen, wholly disconnected from the military service.
While this condition of things existed both in law and in fact, on the 12th day of November, 1867, the President, in confirmation of his approval of the report of the board, made on the ,12th of October, nominated Joel H. Lyman as first lieutenant in place of claimant, “ wholly retired; ” and this nomination was confirmed by the Senate months before a rehearing was ordered on behalf of claimant. .
Before we determine that the President has control of the case, after his order retiring the officer, and the nomination and appointment of his successor, we must inquire into the possible legal effect of such a construction of executive power; and if it leads to the exercise of unwarranted authority we must reject it, unless controlled to the contrary by force of positive enactment.
There is no law in words defining the jurisdiction of the President in a case like the one at bar. If he had the right to order a rehearing under all the circumstances of this case, he had the right to disregard the findings of the second board, and continue the official existence of the claimant as first lieutenant, notwithstanding he had nominated his successor and commissioned him on the confirmation of the Senate before the second board was called into existence.
It is not a suffiaient answer to say, in this case, the claimant was restored to the retired list while his successor was in the active field of duty; and between them there was in fact no antagonism of position.
Courts must deal with principles, and endeavor by their application to establish a system of legal philosophy.
If in our construction of executive authority we should concede the power to revoke the order retiring the officer wholly from the Army, we must by the application of the plain provisions of the statute, find that the President had the right to disregard the second report of the retiring board, and continue the officer in his original relations, the effect of which would be the *350 anomalous condition of two officers occupying the same position at the same time, a result as impossible in law as it is in fact.
The line of executive and judicial authority upon the question presented by this record is by no means uniform and unbroken.
In the earlier decisions of this court, cited by claimant, there may be a seeming sanction of the theory sought to be maintained by him in this case; but in the case of Montgomery (5 C. Cls. R., 98), the court qualified and circumscribed the general doctrine enunciated by the court in the earlier decisions of Smith (2 C. Cls. R.), and Winter (3 C. Cls. R.). The court said in the Montgomery case, in referring to the Smith and Winter cases:
“ There have been two decisions of this court, rendered upon similar orders of revocation by the President, which appear to have caused much trouble and some alarm in the Treasury and War Departments, and which have been carried in contemplation there much further than the facts of the case will either warrant or require. In Captain Smith’s case and Captain Winter’s case the officers were — the one assistant quartermaster and the other commissary of subsistence, and both were in the volunteer service. Their offices were not limited by law, and were not considered in any way filled by others. But in the Regular Army the number of quartermasters of the rank of major was established, and consequently limited bylaw, and the number during the claimant’s ouster was full.”
A case very similar to the one under discussion came before this court, and is reported in 17 C. Cls. R., 344, and, as we now hold, overruled in effect the doctrine of the former decisions.
In that case as in this, the President, after dismissing the claimant (who was a quartermaster in the volunteer service), revoked the order of dismissal and restored him to his former position without having nominated any person in his place, he being in a branch of - the Army where by law there is technically no successor.
In that case the claimant- brought suit to recover pay for the time he was dismissed, and the “ three months’ pay proper” allowed by the act of March 3, 1865 j and although for the purpose of an appeal, the court gave judgment for the claimant, the legal right to recover was decided adversely to the petitioner.
*351 The court, by Judge Scofield, said:
u The power of revocation has frequently been recognized by the accounting officers of the government, and in a qualified form by the early decisions of this court.
“ By some recent decisions of this court, affirmed, upon appeal, by the Supreme Court, the power to revoke a dismissal or withdraw an acceptance of a resignation has been very much circumscribed, if not wholly denied (Mimmack's Case, 10 C. Cls. R., 584; 97 U. S. S. R., 437; McElrath's Case, 12 C. Cls. R., 201, affirmed 102 S. R., 426; Blake's Case, 14 C. Cls. R., 462, affirmed 103 U. S. S. R., 227). The purport of the decisions is that the President having once dismissed a military officer or accepted his resignation and given notice thereof, so that nothing remained to be done to make the severance complete, cannot again restore him to any office except by a new appointment in pursuance of a nomination to and confirmation by the Senate.
“ These decisions and the line'of argument on which they are based might authorize us to hold that the claimant, having been completely severed from the Army by the dismissal and notice, could only be restored by a new appointment, and that the revocation so far as designed to place him in statu quo was void.'
“ Whether it might operate as a new appointment is not a question in this case, because for all subsequent service he has already been paid.”
In the case of McElrath, affirmed by the Supreme Court of the United States, Justice Harlan, in discussing the question whether the act of the Secretary of the Navy in dismissing an officer under the statute of July, 1862, was in law the act of the President, laid great stress upon the fact that after such dismissal the President nominated and the Senate confirmed the appointment of the successor of McElrath, thereby ratifying the act of the Secretary of the Navy.
So in this case it may be said that in the nomination of Lyman as the successor of the claimant the President reaffirmed the report of the Board in finding that he was incapacitated for duty, from causes not incident to the service, and also affirmed his own act in wholly retiring the claimant from the Army. It was at least a collateral affirmance of his own act.
The question of Executive control over an act accomplished came before the Supreme Court of the United States in the celebrated case of Marbury v. Madison (1 Cranch), and while the court did not assume the jurisdiction to settle the immediate controversy, Chief-Justice Marshall delivered a very learned *352 and exhaustive opinion on the question of Executive power and the jurisdiction of the Federal judiciary.
The court said:
“ Where the officer is removable at the will of the Executive, the circumstance which completes his appointment is of no concern, because the act is at any time revocable, and the commission may be arrested if still in the office. But when the officer is not removable at the will of the President the appointment is not revocable and cannot be annulled. It has conferred legal rights which cannot be resumed.
“ The discretion of the Executive is to be exercised until the appointment is made.
“ But having once made the appointment his .power over the office is terminated in all cases where by law the officer is not removable by him. The right of the office is then in the person appointed, and he has the absolute unconditional power of accepting or rejecting it.”
And in the case of Blake (103 U. S. R., 237), the court said:
“ It results that the appointment of Gilmore, with the advice and consent of the Senate, to the office held by Blake, operated in law to supersede the latter, who thereby, in virtue of the new appointment, ceased to be an officer in the Army, at least from the date at which the appointment took effect, and this without reference to Blake’s mental capacity to understand what was a resignation. He was consequently not entitled to pay as post-chaplain after July 2,1872, from which date his successor took rank.
“ Having ceased to be an officer in the Army, he could not again become post-chaplain except upon a new appointment by and with the advice and cod sent of the Senate. (Mimmack v. The United States, 97 U. S., 426.)
The Supreme Court, in the Marbury case, said the President had no power to revoke the appointment of an officer not removable at his pleasure$ and, we submit, having no power to remove, in the exercise of Executive authority, he has no power to reinstate by mere revocation without the advice and consent of the Senate, after the complete severance of the individual and the office.
Upon the doctrine of the Blake Case, we must hold that the nomination of Lyman, and his confirmation by the Senate, as the successor of the claimant, operated in law to supersede the claimant; and thereby he ceased to have any official connection with the Army; and this without reference to the authority and power of the President to review and change his order *353 on the report of a retiring board. The Supreme Court, in the construction of the act of July 13, 1866, said—
“There was, as we think, no intention to deny or restrict the the power of the President, by and with the advice and consent of the Senate, to displace them [officers in the military and naval service] by the appointment of others in their places.” (Blake v. United States, 103 U. S., 237.)
The act of the President in the nomination and appointment of Lyman in the place of Miller, “wholly retired,” was a distinct confirmation and recognition of his former act of wholly retiring Miller from the Army of the United States, and operated in law as a ratification of his order made on the 12th day of October, 1867. The immediate effect of a revocation of the dismissal, if valid, would be to put the officer back into the Army on the active list, but that could not be done, inasmuch as his place was then'filled by the incumbency of his successor.
What is it to be wholly retired from the service 1 It is nothing less than t o be put out of the Army and out of office. There is no wholly retired list in the Army from which the transfer can be made. “An officer, on being wholly retired, becomes a civilian and can be readmitted to the service only by a, new appointment; but he cannot be appointed at once to the retired list. A civilian cannot be appointed as a retired officer.' He must first be appointed an officer .on the active list, of a certain rank. None but a commissioned officer on the active list of the Army can be placed on the retired list.” (Digest of the Opinions of Judge-Advocates General, 433.)
As the result of the adjudica) ions.in this and the Supreme Court, we must hold that the claimant in law was not placed on the retired list of the Army, and therefore he is not entitled to recover on his petition. . „
The proper disposition of the counter-claim in the light of the law that the claimant was not restored to the Army, presents a question of some difficulty.
It may be argued, if the claimant has no right to recover on his claim, then it should follow as a legal corollary that the defendants must recover on their counter-claim.
While in law the claimant was not an officer in the Army, as the result of the order of revocation, and cannot recover, because of the want of that relation, he was a de facto officer, and as such was by his own act, and the concurrence of the au *354 thority of the government in good faith subject to the disqualifications of a, person on the retired list; was subject to whatever duties áre by law incident to the relation of an officer of that kind; and by the sixth finding subjected himself to all tlie requirements of the law and regulations applicable to “ retired officers.”
It has been repeatedly decided by courts of eminent and respectable authority, that a de facto officer is entitled to fees or compensation, earned by him, while in the discharge of the duties of his office, which he held in good faith, and not merely as a usurper. He also refused the one year’s pay and allowance authorized to be paid to officers wholly retired from the service. He supposed, as did the officer having in charge his payment, that he was in law as well as in fact on the retired pay list of the Army, and both parties proceeded in good faith, to do what they each supposed to be required of them, because of such legal status. They were both mistaken as to the law. As between individuals such a-mistake is without remedy, and the parties are left by the law in the exact situation precipitated by their mistake.
In the McElrath case the Attorney-General sought to establish the broad principle that neither a mistake of fact, or of law, made upon the part of an officer, would estop the government and prevent it from going behind such mistake in the final adjustment of its rights against an individual. The court said:
“ Whether the one or the other of these views in tlie broad terms in which they are announced is correct we will not inquire.
“ Eor if the general rule applicable in such cases would preclude the government from reclaiming money which had been paid under a mistake of law simply that rule is inapplicable under the circumstances disclosed in this case. Had the appellant rested on the settlement of his account by the proper officer' of the government his right to invoke the general rule to which we have referred would have been entitled to more consideration than it can now receive.
“Upon receiving the amount awarded to him by the representatives of the government, he distinctly announced his purpose not to abide by their settlement of his accounts; but in disregard thereof he demanded an additional sum, upon the basis of full pay and allowance from June 20, 1866, to July 10, 1873.” (McElrath v. United States, 102 U. S. R., 426.)
In this case no effort was or is made, by the claimant, to attack the integrity of the adjustment of the officers, upon which *355 he was paid after his pretended restoration, either because of a mistake of fact or law; and in that essential particular it differs from the case of McElrath.
It also differs from the McElrath case in the fact that Mc-Elrath rendered no service and occupied no relation to the government except, so far as the retroactive effect of the revocation of his dismissal gave him a relation ; but in this case the claimant from his pretended restoration on the 28th of September, 1868, to the bringing of this suit, did occupy the position, in fact, of an officer on the retired list of the Army, and as such was subject to the disqualifications of law, and the performance of such duty, as by law is incident to that relation.
As between individuals, con tracts .void, because of a defective execution, in the want of some legal requirement in their exemplification or proof, do not forfeit the entire rights of a party, who in good faith, has partly performed such agreements, and the party may recover the measure and value of such performance.
Whether the analogy of the law can be carried to the extent of applying that familiar principle to the obligation and duty of the government in this case, may admit of serious doubt; but we think it may be invoked as being within the domain of reasonable application.
It may be said that the compensation allowed by the payments made to the claimant is disproportionate to the service rendered by him on the retired list; but the statute giving compensation to such officers,-has adjusted the value of his services, and courts are not permitted to measure the value of the consideration when once fixed by the act of the parties, or the provisions of law.
The mistake of payment was made from a misapprehension of the law, as the relation of the claimant to the Army, was understood by both sides as it existed in fact.
This case, involving, as it does, a definition of the power of the Executive in the administration of his office in the regulation of the Army, and embracing in the claim and counter-claim a considerable amount of money, is worthy of the consideration of the court of ultimate jurisdiction; we therefore hold, for the purposes of this case, that he who through the official act of the President of the United States -occupies an office under *356 the government, is subjected to all the disqualifications of such office, performs all its duties, and is paid the emoluments thereof, cannot be required to return those emoluments to the government, though the President’s act may have been in reality unlawful and void, and may afterwards be so adjudged by a court having jurisdiction of the question. It is the judgment of the court that the defendants recover the sum of $1,000 on their counter-claim, being the amount paid to the claimant from the 12th of October, 1867, to the 28th of September, 1868, when the claimant was not in fact connected with the Army.