IvIChardson, J.,
delivered the opinion of the court:
This action is brought by an officer of the Army, on the retired list, to recover the longevity pay according to the construction put upon section 1262 of the Bevised Statutes by the decision in'the case of Tyler v. The United States (16 C. Cls., 223, affirmed on appeal, 105 U. S. R., 244). With the pay which he has received in other respects he is content.
The controversies which arise aré as to the length of time for which his service is to be computed, and as to the right of the defendants to recover back the pay and allowances received by him for the period during which the defendants contend that he was not legally in office.
He was duly appointed by the President, by and with the advice and consent of the Senate, a hospital chaplain June 7, 1862, and so continued until the 15th of September, 1865, when, by order of the 4th of August, 1865, he was honorably mustered out, together with others, because his and their services were no longer needed.
On the 16th of March, 1866, the President revoked the order mustering out the claimant, who thereupon returned to duty as hospital chaplain, and so continued until August 22,1867, when he was again mustered out.
On the 12th of September, 1867, he was duly appointed by the President, by and with the advice and consent of the Senate, a post chaplain, and on the 1st of December he was placed on the retired list as such and so continues.
1. We will first consider what was the official status of the claimant during the different periods of time for which he sets up his demand.
The Supreme Court held in Mimmack's Case (97 U. S. R., 426, affirming the judgment of this court, 10 C. Cls. R., 584) that *392 “prior to the act of the 13th of July, 1866 [chap. 176, sec. 5, now Revised Statutes, sections 1229 and 1624, art. 36, p. 282], the President could dismiss an officer in the military or naval service without the concurrence of the Senate; but he never could nominate and appoint one ‘without the advice and consent of the Senate as required by the Constitution.” They, therefore, further held that when an officer had been put out of office by the acceptance of his resignation and notice thereof, he could not be restored by a mere revocation of the acceptance.
The claimant had been out of office six months when the President undertook to put him back into the Army by a mere revocation of the order by which his connection with the Army was in fact and in law duly severed. The decision of the court of last resort seems to be conclusive that he did not again become an officer by the President’s revocation of the order of muster-out, nor until he was duly appointed post chaplain by and with the advice of the Senate, September 12, 1867. It matters not whether an officer is out of office, as in Mim-mack’s Case, by resignation, or as in this case, by muster-out by order of the President. Both methods are equally effective. After he is out, in either way, he cannot be restored except by the President, by and with the advice and consent of the. Senate, as provided by the Constitution.
If we look at another phase of the exercise of the power of revocation, which is claimed, we shall see to what extremes the sustaining of it would carry us. Suppose the President should revoke an order of dismissal without the consent and against the wish of the discharged officer, and should order him to duty. We hardly think anyone would claim that such person could not stand upon his discharge as full and complete and as putting him beyond the President’s subsequent orders.
The distinction that in one case the restoration is with the consent of the discharged officer and in the other without it, is put forth as justifying the proceedings in the one and not in the other.
But the difference is wholly immaterial in legal effect. It is the power of the President that is in issue, and if the President does not have the power without the consent of the discharged officer he cannot have it with such consent. The right depends *393 upon the law and not upon the will of a private citizen who might be affected by it.
The consent of the party interested cannot be substituted for the consent of the Senate, which is required by the Constitution.
The instances wherein courts and.executive officers are held to possess the power of setting aside their decrees and orders are generally, if not always, where there is no statute or constitutional provision specifying another method by which alone the result sought to be attained can be had.
In these Army officers’ cases the result claimed is the putting of a person into the Army as an officer without the concurrence of the Senate, which is in direct conflict with the Constitution.
If the President thinks he has done a wrong in any case by putting an officer out of the Army the only way provided for rectifying it is to reappoint him by and with advice and consent of the Seuaté.
Previously to the Mimmaok Vase, decided by this court in 1875 (10 C. Cls. R., 585), and affirmed by the Supreme Court in 1879 (97 U. S. R., 426); McElrath’s Case, decided by this court in 1877 (12 C. Cls. R., 202), and affirmed in 1880 (102 U. S. R., 426); Blake’s Case, decided by this court in 1879 (14 C. Cls. R., 460), affirmed in 1881, and Keyes’s Case, decided by this court in 1880 (15 C. Cls. R., 533), and affirmed in 1884 (109 U. S. R., 336), there had been no case wherein the power of the President to revoke his acceptance of a resignation or his order dismissing an officer, and thus to restore the person to the Army, was directly put in issue by the argument for the defendants.
There had been several cases in which, assuming that such power might legally be exercised by the President, this court was called upon to determine the consequences of such revocation with respect to the officer’s status in the Army and his pay. (Smith’s Case, in 1867, 2 C. Cls. R., 206; Winter’s Case, in 1868, 3 id., 136; Reynolds’s Case, in 1868, 3 id., 197; Barnes’s Case, in 1869, 4 id., 216, and Montgomery’s Case, in 1870, 5 id., 93.)
But when the direct question was subsequently raised and argued in Mimmack’s, McElrath’s, Blake’s, and Keyes’s Oases this court and the Supreme Court held that the President could not thus restore a dismissed officer to the Army. This final and *394 authoritative determination renders the decisions in the earlier cases of this court of no importance, since when it was thus established that the President’s revocation was inoperative and void for the purposes of restoration the consequences which were supposed to follow upon a valid revocation had no foundation to rest upon.
According to these views, the claimant was not an officer of the United States from the time he was mustered out, September 15, 1865, until he was duly reappointed by and with the advice and consent of the Senate, September 12, 1867.
2. From March 16, 1866, to September 1, 1867, he actually performed service as such.
In Bennett's Case (just decided) we have set out the statutes on the subject of longevity pay, and have stated our reasons in full for holding that the time of actual service of an officer, either as an enlisted man or officer defacto, is to be credited to him for that purpose, without regard to any defect which might be found in his legal title to the office or position in which he served.
Applying that rule to the present case the claimant is entitled to credit, in computing his longevity pay, for all the time he claims, except "from September 15, 1865, to March 16, 1866, while he was not only not in office de jure nor de facto, but while he performed no service as such. Upon this basis his longevity pay would amount to $2,578.07.
3. As to the counter-claim. The claimant received the pay and allowances of a hospital chaplain for the time from March 16, 1866, when his first muster-out was revoked, to the time of his second muster-out, September 1, 1867, during all of which period he performed service as such. As to this money the parties stand in somewhat different relations to each other than as to that which the claimant is seeking to recover as longevity pay.
This money was paid to the claimant on mutual mistake as to both the right of the' government to his services as a public officer and his right to the office and its emoluments. The claimant did actually perform the services attached to the office, and as it is not possible now to correct the mistake on the one side by returning the services, so the mistake on the other side ought not to be corrected by compelling him to pay back the money which he had received in good faith, as the *395 salary of an office held defacto, by an error of law for which he was no more responsible than were the defendants.
Since both parties, by any judgment which we can give, cannot be put back in their original position before the happening of their mutual errors, we must leave them in statu quo. We hold that the claimant may in equity and good conscience retain the money which has already been paid to him.
This case differs widely and materially from that of McElrath (102 U. S. R., 426, affirming the judgment of this court therein, 12 C. Cls. R., 201). McElrath was not only out of office in point of law for more than seven years, but he was not during that time an officer de facto, nor did he perform any duties nor in any wise claim the office, but engaged all the time in other occupations. He had been- dismissed, and when, seven years afterwards, that dismissal was revoked and he was allowed to resign as of that date, he claimed and received from the government back pay for the whole intervening time. This was a mistake to the loss and injury of one side only, and could be corrected without injustice to the other, by compelling him to refund the money illegally paid, and for which he had rendered no consideration, either in services or by color of office, thus restoring the parties to their former condition, in which neither had parted -with anything nor lost anything.
The counter-claim is not sustained except for the sum of $29.96 overpaid to the claimant by mistake of reckoning, and the sum of $83.79 already received by him, both of which are allowed.
4. On the whole case the claimant is entitled to recover the sum of $2,464.32, being the balance of his longevity pay over the amounts received by him as allowed upon the counterclaim.
Nott, J., read an opinion in the case of Lieutenant Miller (ante), and the two being decided on the same day, his opinion in Miller’s case was likewise entitled and filed as his opinion in this.