NOT RECOMMENDED FOR PUBLICATION
File Name: 13a0767n.06

No. 11-3773

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

***Aug 16, 2013***

DEBORAH S. HUNT, Clerk

| | |
|---|---|
| CHRISTOPHER HARDY, | ) |
| | ) |
| Petitioner-Appellant, | ) |
| | ) |
| v. | ) ON APPEAL FROM THE UNITED |
| | ) STATES DISTRICT COURT FOR |
| | ) THE NORTHERN DISTRICT OF |
| MAGGIE BEIGHTLER, Warden, | ) OHIO |
| | ) |
| Respondent-Appellee. | ) |

Before: MARTIN and GILMAN, Circuit Judges; FOWLKES, District Judge.[*]

**BOYCE F. MARTIN, JR., Circuit Judge.** Petitioner Christopher Hardy filed the habeas petition before us on double-jeopardy grounds. An Ohio jury convicted Hardy of rape and kidnapping and found him not guilty of various other crimes. Hardy appealed his convictions, and the Ohio Court of Appeals remanded his case for a retrial. On retrial, the jury was deadlocked on the rape count, but it found Hardy guilty of kidnapping. Following unsuccessful appeals in the state courts, Hardy filed a petition for a writ of habeas corpus, claiming that he was placed twice in jeopardy due to an insufficient indictment from his first trial and because the prosecution introduced evidence of previously acquitted conduct at his second trial. The district court denied Hardy's petition, and for the reasons that follow, we AFFIRM.

---

[*] The Honorable John T. Fowlkes, United States District Court Judge for the Western District of Tennessee, sitting by designation.

I.

Mr. Hardy married Mrs. Hardy in October 2001, but by 2002 their relationship had deteriorated and Mrs. Hardy moved out of Mr. Hardy's home in March. The couple maintained contact after the separation and Mrs. Hardy spent the night at Mr. Hardy's home on occasion. On April 5, 2002, Mrs. Hardy went to Mr. Hardy's home. According to Mrs. Hardy, Mr. Hardy pressured her to have sex and she "gave in" because of his terrible temper. Later that evening, Mrs. Hardy tried to leave but Mr. Hardy pulled her back on the bed. He began yelling at her and using abusive language. Mr. Hardy then "inserted three fingers into her vagina, and pulled her across the bed and ripped off her T shirt. For approximately one hour, he refused to let her leave the bed as he continued to degrade her and refused to let her have her clothing." Eventually, Mr. Hardy let Mrs. Hardy out of the bedroom and she went to get a glass of milk from the kitchen. When Mrs. Hardy returned to the bedroom, Mr. Hardy threw the glass of milk in her face and told her to get out of the house. When Mrs. Hardy got into her car to leave, Mr. Hardy jumped onto the car to stop her and caused significant damage to her car. After Mrs. Hardy drove away, she went home and contacted a help hotline the next day, which led to an investigation into the incident.

The state indicted Hardy in October 2002 on seven criminal counts: two identically worded counts of rape, two identically worded counts of kidnapping, one count of abduction, one count of felonious assault, and one count of domestic violence. The prosecution distinguished the identical rape and kidnapping counts in its presentation to the jury. At closing arguments, the prosecutor said the following:

Each count in the indictment constitutes a separate and distinct crime. And as such, they are deserving of your independent and individual deliberation.

And so with that in mind, I find it incumbent upon myself to, at this moment, to go through the indictment and indicate to you the State's theory of each count and then indicate to you the evidence that supports each count in order for you to return the appropriate verdict.

Count number one, the theory is that while the victim was inside of the apartment of the defendant and seated on at the edge of his bed, he approached her, pushed her back and engaged in vaginal intercourse with her against her will. Her testimony was that she told him she didn't want to, she said no and that essentially she submitted because she knew what would happen if she resisted.

And in count number two, the elements are the same but the theory is that the defendant raped the victim when he inserted three fingers into her vagina and did so without her consent, against her will and by force or threat of force.

And so those are the two separate and distinct acts that we are alleging constitute the crime of rape.

\*\*\*

In terms of counts three and four, they mirror count one and two to a certain extent. Count number three and count number four the charge is the same and it's kidnapping. And the allegation is that by force, the defendant – there's a lot of legal language. You'll get the jury instructions that the Court will read to you at the end.

But pertinent to this case and our theory, the allegation is that the defendant, by force, restrained her of her liberty for the purpose of terrorizing her or engaging in sexual activity.

\*\*\*

In Ohio, if you restrain someone of their liberty for the purpose of engaging in sexual activity, it is a crime. And that's what our theory is in count numbers three and four.

He restrained her when he had sexual intercourse with her, vaginal intercourse, and he restrained her of her liberty when he inserted three fingers into her vagina.

As for the abduction charge, the state attempted to prove that, following the alleged digital rape, Hardy "knowingly, by force or threat, restrained [Mrs. Hardy] of her liberty under circumstances which created a risk of physical harm or placed her in fear." The prosecution asked for the jury to recall that Mrs. Hardy "wanted to leave" and "tried to get out of the bedroom and then out of the apartment," and that Hardy "kept grabbing her, pulling at her, pulled her shirt off, pushing

her back into the bedroom and then continued the verbal assault . . . degrading her, demeaning her, pointing out different portions of her anatomy."

In early 2003, a jury acquitted Hardy of the rape and kidnapping counts associated with the vaginal rape as well as the abduction charge. The trial court granted Hardy's Rule 29 motion to dismiss the felonious-assault charge. The jury found Hardy guilty of the rape and kidnapping counts associated with the alleged digital rape, and the domestic-violence charge. However, on appeal, the Ohio Court of Appeals declared a mistrial and remanded the case. The Court of Appeals found that the trial court erred by responding to jury questions without Hardy's counsel present. The court denied several assignments of error as moot but addressed the merits of several others, including a challenge to the indictment on the grounds that it contained multiplicitous counts of rape and kidnapping. The Court of Appeals overruled the assignment of error, concluding that the prosecutor had differentiated the charges during the course of the trial. The domestic-violence charge was later dismissed on speedy-trial grounds.

Hardy was retried on one count of rape and one count of kidnapping. At the second trial, the prosecution emphasized during voir dire, while questioning witnesses, and in closing arguments that the rape and kidnapping counts at issue had to do with Hardy's alleged digital penetration of Mrs. Hardy. In addition, the prosecution argued in its opening statement that Hardy's actions, both during and after the digital rape, were relevant to the kidnapping charge. In discussing the kidnapping charge, the prosecution said the following:

> After she's able to get away from him, at that point he begins to verbally and physically abuse her further. She wants to leave the room and he starts pushing her against the wall. He starts grabbing her by her arms, both arms, with his fingers in the

manner where his thumb is on her inner muscle, the bicep, and he begins pushing against her into the wall.

The prosecution continued to discuss all of Hardy's actions that occurred after the digital rape, and associated those actions with the kidnapping charge.

The jury found Hardy guilty of the kidnapping count, but could not come to an agreement on the rape count. The court declared a mistrial on the rape count, which was later dismissed at the State's request. Hardy was sentenced to three years of imprisonment for the kidnapping conviction with five years of mandatory post-release control, and fined $3,000.

Hardy appealed his kidnapping conviction to the Ohio Court of Appeals, arguing a violation of the Double Jeopardy Clause. The Court of Appeals affirmed Hardy's conviction and the Ohio Supreme Court dismissed his appeal. In January 2008, Hardy filed a petition for a writ of habeas corpus. Hardy's habeas petition was first considered by a magistrate judge who, in his Report and Recommendation, determined that there had been a double-jeopardy violation. The magistrate judge found that, at the second trial, the state introduced evidence associated with the abduction charge of which Hardy had been acquitted at the first trial. The district court disagreed with the magistrate judge's report and denied Hardy's habeas petition, finding that there had not been a violation of the Double Jeopardy Clause. Hardy appealed to this court for review.

II.

"We review de novo a district court's decision to grant or deny a petition for a writ of habeas corpus." *Joseph v. Coyle*, 469 F.3d 441, 449 (6th Cir. 2006). Hardy's case is governed by the

provisions of the Antiterrorism and Effective Death Penalty Act of 1996 because he brought this case after 1996. *Pinchon v. Myers*, 615 F.3d 631, 638 (6th Cir. 2010).

The Death Penalty Act requires that we apply a deferential standard of review to claims that were adjudicated on the merits in state court. *Id.* at 639. If a state court considered a claim on the merits, we may grant a writ of habeas corpus only if "the state court's decision 'was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" *Coyle*, 469 F.3d at 449 (quoting 28 U.S.C. § 2254(d)(1)). Clearly established federal law is to be determined by the holdings of the United States Supreme Court; however, an explicit statement by the Court is not mandatory. "[T]he legal principles and standards flowing from [Supreme Court] precedent" also qualify as "clearly established law." *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir. 2005) (quoting *Taylor v. Withrow*, 288 F.3d 846, 852 (6th Cir. 2002)).

A state-court decision is "contrary to" clearly established federal law "if the state court arrived at a conclusion 'opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts.'" *Wolfe v. Brigano*, 232 F.3d 499, 501 (6th Cir. 2000) (quoting *Williams v. Taylor*, 529 U.S. 362, 405 (2000)). An "unreasonable application" of clearly established federal law occurs where "'the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'" *Id*. (quoting *Williams*, 529 U.S. at 407). "In order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than

incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins v. Smith*, 539 U.S. 510, 520–21 (2003) (citations omitted).

If the state court did not consider the claim on the merits, we may apply a de novo review standard. *Nields v. Bradshaw*, 482 F.3d 442, 449 (6th Cir.2007).

III.

Hardy's brief presents two different double-jeopardy theories. The first theory is that he was twice placed in jeopardy when he was retried on kidnapping and rape counts of which he had been found not guilty at his first trial. The second theory is that he was twice placed in jeopardy when, at the second trial, the court allowed the jury to consider, without limiting instructions, evidence related to a charge of which he was acquitted. We will assess each theory in turn.

Hardy bases the first theory on the fact that, at the first trial, the indictment contained identically worded counts of rape and identically worded counts of kidnapping. Hardy argues that because the two counts of rape and the two counts of kidnapping in the first trial contained the same exact words and were not differentiated in the trial court's jury instructions, there was no basis on which to determine which acts supported the jury's acquittals and which supported the guilty verdicts. Thus, Hardy argues, being retried for rape and kidnapping put him in jeopardy of being convicted of the same rape and kidnapping of which he had been found not guilty at the first trial. We apply the Death Penalty Act's deferential standard of review because the state courts dealt with this argument on the merits.

In *Russell v. United States*, 369 U.S. 749 (1962), the Supreme Court discussed the sufficiency of indictments. In particular, it noted that two of the criteria by which the sufficiency of an indictment is measured are as follows:

> [F]irst, whether the indictment contains the elements of the offense intended to be charged, and sufficiently apprises the defendant of what he must be prepared to meet, and, secondly, in case any other proceedings are taken against him for a similar offense whether *the record shows* with accuracy to what extent he may plead a former acquittal or conviction.

*Russell*, 369 U.S. at 763–64 (citing *Cochran v. United States*, 157 U.S. 286, 290 (1895); *Rosen v. United States*, 161 U.S. 29, 34 (1896); *Hagner v. United States*, 285 U.S. 427, 431 (1932)) (emphasis added) (quotation marks omitted). Hardy's first double-jeopardy theory essentially challenges the sufficiency of the first trial's indictment on the basis of the second *Russell* criterion—whether the record shows with accuracy to what extent he may plead a formal acquittal or conviction in case any other proceedings are taken against him for a similar offense.

The Ohio Court of Appeals considered the merits of this double-jeopardy theory on Hardy's direct appeal from the second trial. The Court of Appeals determined that the record demonstrated with accuracy the difference between the identical counts of rape and kidnapping from the first trial such that Hardy was protected from double jeopardy when he was retried for rape and kidnapping. In making its determination, the Court of Appeals pointed to its own opinion from Hardy's direct appeal from the first trial. In its prior ruling, the court found that "the prosecutor differentiated the two rape charges, arguing that count one referred to the incident of vaginal intercourse, and count two referred to the incident of digital penetration." In that same opinion, the Court of Appeals continued by saying that the "prosecutor also distinguished the two kidnapping charges, associating

each of them with separate incidents of rape." The Court of Appeals concluded its analysis by distinguishing this case from *Valentine v. Konteh*, 395 F.3d 626, 635 (6th Cir. 2005), in which we determined that an indictment containing twenty identical counts of rape and twenty identical counts of felonious sexual penetration violated the Double Jeopardy Clause where the record displayed "no specificity regarding the factual offenses [the petitioner] allegedly committed." *Valentine*, 395 U.S. at 635. The lack of specificity in the record regarding the identical offenses creates a situation where "[w]e cannot be sure what double jeopardy would prohibit because we cannot be sure what factual incidents were presented and decided by this jury." *Id*.

The Court's decision in *Russell* holds that an indictment is sufficient so long as "the record shows with accuracy" the extent to which a defendant may plead a former acquittal or conviction. *Russell*, 369 U.S. at 763–64 (citing *Cochran*, 157 U.S. at 290) (rest of citation omitted) (internal quotation marks omitted). The record in this case shows with great accuracy the conduct upon which Hardy was convicted and acquitted at the first trial. On several occasions, the prosecution was careful to explain to the jury the differences between the identical rape counts and the identical kidnapping counts. The state court correctly concluded that this case does not present the problems highlighted by this Court in *Valentine*. Unlike the record in *Valentine*, the record in this case allows us to be sure what double jeopardy would prohibit in the event of future proceedings because we can be sure of the factual incidents upon which the jury based its verdict. The state court's holding—that the record provides sufficient distinction between the original indictment's identically worded counts of rape and identically worded counts of kidnapping to protect Hardy from double jeopardy in the

event that he would be tried for a similar offense—was not contrary to, or an unreasonable application of, federal law as determined by the Supreme Court.

Hardy's second double-jeopardy argument is that, at the second trial, he was twice placed in jeopardy when the jury, in considering the kidnapping charge, was allowed to consider evidence related to the abduction charge for which he was acquitted at the first trial. Hardy points to the overlap between the events used to support the abduction charge in the first trial and the kidnapping charge in the second trial, and the fact that the court did not provide the jury with limiting instructions. Hardy's brief argues that, pursuant to the Supreme Court's decision in *Ashe v. Swenson*, 397 U.S. 436 (1970), the jury's consideration of evidence related to acquitted conduct is barred by the doctrine of collateral estoppel, which falls under the constitutional prohibition against double jeopardy.

The district court applied de novo review because it concluded that this argument had been raised in state court and that the state courts had declined to consider the argument on the merits. While it is not entirely clear whether Hardy presented this double-jeopardy argument in state court, we agree that the state court never considered the argument on the merits and we will conduct de novo review.[1]

---

[1] Part of the clarity problem is the result of insufficient briefing on the part of Hardy's attorney. After careful review of Hardy's brief for his direct appeal after the second trial, it is not at all clear whether Hardy made an *Ashe*-based argument. Although the brief references *Ashe*, it fails to articulate a legal theory based on *Ashe*. Assuming that Hardy did not raise this argument before the state court, we will still consider it on the merits. Although the state raised a nonexhaustion argument in the district court, it abandoned the argument on appeal. "Issues which were raised in the district court, yet not raised on appeal, are considered abandoned and not reviewable on appeal." *Robinson v. Jones*, 142 F.3d 905, 906 (6th Cir. 1998) (citing *Enertech Elec., Inc. v. Mahoning Cnty. Comm'rs*, 85 F.3d 257, 259 (6th Cir. 1996)). Furthermore, nonexhaustion does not create an absolute jurisdictional bar to our consideration of the issue on the merits. *Granberry v. Greer*, 481 U.S. 129, 131 (1987).

The habeas petitioner in *Ashe* was suspected of participating in the robbery of six men who were playing poker in the basement of a home. *Ashe*, 397 U.S. at 437. He was charged with six separate robbery offenses, one for each victim. *Id*. at 438. During the trial for the robbery of victim Donald Knight, the proof that an armed robbery occurred and that property had been taken was unassailable; therefore, the only issue that remained for the jury was whether the petitioner was one of the actual robbers. *Id*. The jury had been instructed that if it found that the petitioner was one of the robbers, he was guilty even if he had not personally robbed Knight. *Id*. at 439. The jury returned a verdict of not guilty. *Id*. When the petitioner was brought to trial for the robbery of one of the other victims, the prosecution presented virtually the same case as it had during the Knight trial and the court submitted identical jury instructions, yet the jury found the petitioner guilty. *Id*. at 440.

The petitioner subsequently filed a habeas petition that reached the Supreme Court. The Court explained that collateral estoppel "means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Id*. at 443. The ultimate issue that had been determined at the petitioner's first trial was that there was reasonable doubt as to whether he was one of the actual robbers. *Id*. at 445. The Court held that the second trial violated the collateral-estoppel doctrine because "[o]nce a jury had determined upon conflicting testimony that there was at least a reasonable doubt that the petitioner was one of the robbers," the State could not present the same or different evidence related to the identification of the robbers in a second prosecution for the robbery of Knight or any of the other victims. *Id*. at 446.

Following *Ashe*, the Supreme Court issued its opinion in *Dowling v. United States*, 493 U.S. 342 (1990). In *Dowling*, the Court determined that, at the petitioner's trial for various offenses arising out of a bank robbery, the Double Jeopardy Clause did not bar the use of testimony relating to a home invasion that the petitioner had been previously acquitted of committing. *Dowling*, 493 U.S. at 343–44. At the outset, the Court noted that the burden is on the defendant "to demonstrate that the issue whose relitigation he seeks to foreclose was actually decided in the first proceeding." *Id.* at 350. The Court found that there was "any number of possible explanations for the jury's acquittal verdict" in the first trial, and that the petitioner had not met his burden of establishing the ultimate issue upon which the jury based its verdict. *Id*. at 351–52. The Court declined to extend *Ashe* "and the collateral-estoppel component of the Double Jeopardy Clause to exclude in all circumstances . . . relevant and probative evidence that is otherwise admissible under the Rules of Evidence simply because it relates to alleged criminal conduct for which a defendant has been acquitted." *Id.* at 348.

To the extent that Hardy makes an *Ashe*-based collateral-estoppel argument in his brief, he makes a very general one—that collateral estoppel barred the introduction of any of the evidence related to the acquitted abduction charge during his second trial. Hardy's argument is too broad. He has not identified an ultimate issue of fact that he believes to have been precluded, let alone demonstrated that the issue was actually decided by the jury at the first trial. Although evidence associated with the abduction charge was introduced in the second trial, Hardy has not met his burden of identifying an issue and demonstrating that the issue could not be relitigated.

No. 11-3773
*Hardy v. Beightler*

For the foregoing reasons, we AFFIRM the district court's denial of Hardy's petition for a writ of habeas corpus.