OPINION.
Scofield, J.,
delivered the opinion of the court:
July 15,1870, Congress enacted the following law:
Sec. 17. And be it further enacted, That the President of the United States he, and he is hereby, authorized to drop from the rolls of the Army for desertion any officer who is now, or who may hereafter he, absent from duty *441 three months without leave; and any officer so dropped shall forfeit all pay and allowances due or to become due, and shall not he eligible for reappointment. (16 Stat. L., oh. 294, 319.)
At that time tbe. claimant was a second lieutenant in the Army, having been appointed February 14, 1868.
July 25, 1870, the following order was made by the President : -
War Department,
Adjutant-Generae’s Office,
Washington, July 25, 1870.
Under the provisions of section 17 of the Act approved July 15, 1870, the following named officers are, by direction of the President, hereby dropped from the roils of the Army for desertion:
1st Lieutenant Levant W. Barnhart, 4th U. S. Cavalry, absent since April 7, 1,869.
1st Lieutenant William J. Patterson, 5th U. S. Artillery, absent since August 14, 1869.
2d Lieutenant Walker A. Newton, unassigned, absent since August 20, 1869.
By order of the Secretary of War.
E. D. Townsend,

Adjntant- Gen eral.

The claimant alleges that he was not absent from duty for three months without leave, and that the order of the President was therefore void.
As this act, considered by itself, authorized the President to drop from the rolls of the Army any officer who should be absent from duty three months without leave, and provided no tribunal by which the alleged absence could be ascertained, it necessarily devolved upon him the duty of finding the fact as well as applying the law. Upon what evidence he acted, whether more or less than is laid before us, does not appear. He may have considered evidence which this court would reject; he may have misunderstood it, or erred in his judgment' as to its force and effect, but the law of 1870 provided no mode of review. Congress undoubtedly supposed that the Oom-mander-in-Ohief of the Army was capable of deciding this single fact without mistake or bias. At all events, we are not authorized by this act'to review-his finding of fact. Eight or wrong,.we must presume the fact to be as the President determined it.
But if we were authorized to review his finding, it is not at all certain that we could arrive at a different conclusion. It is *442 true that tbe claimant was not assigned to active duty after August 20, 1869, but he was still subject to military control and Army regulations. By these regulations he was required to report monthly to the Adjutant-General. ' This duty he entirely neglected. In consequence of this neglect his whereabouts was unknown at the Department, and no orders could be given him. August 20,1869, he was ordered to report to the commancting general at New Orleans, and that officer was ordered to place him under arrest and try him by court-martial for assigning his pay to two different parties for the same month, but the order could not be served upon him, because he reported to the Adjutant-General no address. It is not improbable that he heard of these orders and determined to avoid a trial, for soon after he forwarded the following letter:
Holly Sinkings, Miss., Sept. 2,18G9.
Gbnbkal: I have flic honor to report that my present station is Holly Springs, Miss.
Having received no order to join any regiment, I start immediately for Washington.
I am, general, very respectfully, your obedient servant,
W. A. Newton,

Lieutenant, XX. S. A., late Thirty-fourth Infantry.

To the Adjutant-General, IJ. S. Army¿

Washington, D. 0.

Although this letter is dated September 2, it was not received at the Department until eight days afterwards, and he did not, in pursuance of his announcement, appear in Washington. From that time he never reported, as required by the Regulations, to the Adjutant-General. The Department had no official knowledge of him after this time until he applied to the President about ten years afterwards for a reconsideration of his case. But whether these and other similar facts set out in the findings would justify the conclusion that the claimant was absent from duty for three months without leave is not now a question for us to' decide..
Thus far we have considered the case as controlled solely by the Act of July 15,1870. We must now consider it in connection with other acts.
July 25,1879, the claimant made application to the President for a reconsideration of his case, claiming that without a court-martial he had been illegally dropped from the rolls.
*443 November 29,1879, he again made application to the Presi-' •dent to convene a court-martial for his trial under the provision •of section 1230 of the Eevised Statutes. Both applications were refused.
Claimant now contends that the order dropping him from the rolls is- void for two reasons—
First. Because the order was not made in pursuance of a sentence of a court-martial, as required by the Act of July 13, 1866, ch. 176, (14 Stat. L., 92, now the last clause of section 1229 •of the Eevised Statutes). This act provides that—
No officer in tlie military or naval service shall in time of peace he dismissed from the service except upon and in pursuance of a sentence of a ■court-martial to that effect.
Second. Because on his application for a trial under the Act ■of March 3, 1865 (13 Stat. L., 489, now section 1230 of the Ee-vised Statutes), a court-martial was not convened within six months. That section is as follows:
' When any officer dismissed hy order of the President makes in writing ■an application for trial, setting forth, under oath, that he has been wrongfully dismissed, the President shall, as soon as the necessities of the service may x>ermit, convene a court-martial to try such officer on the charges on which he shall have been dismissed. And if a court-martial is not so convened within, six months from the presentation of such application for trial * * * the order of dismissal hy the President shall he void.
Here we have three different acts of Congress, not altogether harmonious, bearing upon the case: First, the Act of 1865, giving a dismissed officer the right of trial by court-martial; second, the act of 1866, forbidding dismissals without a court-martial; and, third, the Act of 1870, authorizing the President to drop from the rolls of the Army any officer absent from duty without leave for three months.
The history of these provisions explains the want of harmony. The Act of July 17, 1862 (12 Stat. L., 596, §17), authorized the President to dismiss officers as he saw fit. It was supposed to be a war necessity. As the war approached its close, the Act of March 3,1865, was passed to restrain the unlimited power of dismissal. After the war was over, the Act of July .13, 1866, was passed, repealing the Act of 1862 altogether, but left the restraining Act of 1865 remaining upon the statute-books, but with nothing which it could restrain. This repealing Act of 1866 provided, as an additional safeguard to *444 officers; that no officer should be dismissed except upon the sentence of a court-martial. These three acts are re-enacted in the Bevised Statutes. The Acts of 1870 and 1806 are put together as section 1229, and the restraining Act of 1865 is by itself as section 1230, As they now stand, section 1229 provides that the President may drop from the rolls certain officers, and then that it must be done only by the sentence of a court-martial; and section 1230, that officers dismissed by the President shall be entitled to be subsequently tried by a court-martial.
Whatever may be the construction to be placed upon these provisions since they have been brought together in the Be-vised Statutes, we are of the opinion that the Act of 1870 was intended to give to the President a fresh grant of power to be exercised at that time, independent of the Acts of 1865 and 1866.
But whatever may be the construction of these several acts, either before or after revision, we are of the opinion that an officer illegally or wrongfully dropped from the rolls by the President, under the Act of 1870, should demand his restoration or make his application for trial by court-martial within a reasonable time. Long delay, by changes, promotions, and appointments, may work great confusion in the Army Begister and great injury to many officers. Witnesses disappear and facts are forgotten. In this case the claimant waited nine years before making his application. During all this time he did not report himself to the Department, neither rendered nor offered to render any service, made no claim to the office or its pay, and now gives no good reason for his long silence. Under these circumstances, in our opinion, the law should presume acquiescence.
To declare the order of the President void at this late day, and thus authorize the claimant to draw pay from May, 1869, amounting, as he claims, to $16,800, would be paying a great price for negligence of duty while in the service, and greater negligence of his supposed rights after he was dropped.
The petition is dismissed.