Campbell, Chief Justice,
delivered the opinion of the court:
By an order of the President, dated February 11, 1918, Col. Wallace, Quartermaster Corps, United States Army, Avas dismissed from the service of the United States under the provisions of the one hundred and eighteenth article of war. The dismissal was made upon the recommendation of the Secretary of War, who stated, in his communication, his reasons for making it. The plaintiff was notified of the President’s action on February 13, 1918. In July, 1918, *399 he made an application for trial by court-martial, setting forth, under oath, that he had been wrongfully dismissed. This application was received by The Adjutant General on August 5, 1918, was referred to the Judge Advocate General, for an opinion, and that officer concluded that it should be denied. On September 7, 1918, the plaintiff was notified that his application for a court-martial had been disapproved by the Secretary of War. It does not appear that it ever reached the President.
On February 5, 1919, the plaintiff reported to The Adjutant General for duty, claiming the benefits of section 1230, Bevised Statutes.
Subsequent to the order of dismissal, another officer was nominated to the Senate and confirmed by that body. By that appointment and confirmation the complement of officers allowed in the grade was filled, being 21 in number.
The question in the case is, whether the dismissal of the plaintiff by the President’s order,-or the nomination to and confirmation by the Senate of another, had, in either case, the effect of creating a vacancy in the office held by him.
The contention on behalf of the plaintiff is that section 1230, Kevised Statutes, sustains his right of recovery, because, it is urged, he seasonably applied, in due form, for a court-martial, following the dismissal order; his application was denied; a court-martial was not convened to try him on the charges on which he was dismissed, and that, as a consequence, the order of dismissal was rendered void by force of the statute. To attain the result thus contended for it must be concluded that the order of dismissal was not effectual to create a vacancy in the office held by plaintiff at the time, but was rather a suspension until such reasonable time had elapsed within w'hich the officer could invoke the benefits of the statute under which he asserts his claim.
It can not be seriously questioned that if a vacancy in his office was created by the officer’s dismissal it could only be filled by a new appointment made by the Executive, by and with the consent of the Senate. It could not be filled by legislative enactment. Wood’s Case, 107 U. S., 414 (15 C. Cls., 151); Mimmack Case, 97 U. S., 426, 437; Corson Case, 114 U. S., 619, 622. Nor can it be successfully denied *400 that the authorities establish these propositions — (1) that unless limited by some statute, the President may summarily dismiss an officer from the military service; and (2) that the President and Senate, as an incident to their constitutional power of appointment, may displace an officer and thereby create a vacancy. Whether this latter power can be limited by statute it is unnecessary here to determine.
In McElrath’s Case, 12 C. Cls., 201, this court, in an opinion by Judge Loring, refers to Ex parte Hennen, 13 Pet., 230, and says:
“ On this authority there are two distinct constitutional powers of removal — one vested in the President and Senate as incident to their power of appointment; the other vested in the President alone, as an attribute of the executive power belonging to his office. And as to this, and probably in consequence of the construction made, the form of commissions adopted for officers of the Army and Navy and Marine Corps would seem intended to prevent all question; for now the commissions Tun “ for and during the pleasure of the President.” This no one can determine and declare but himself; and when he declares it the commission necessarily expires by the express terms of its limitation.”
To the same effect is Gratiot’s s Case, 1 C. Cls., 258 (decided in 1865). And the plaintiff’s commission ran “to continue in force during the pleasure of the President for the time being.”
The power in the President to summarily dismiss an officer is conceded in McElrath’s Case, 102 U. S., 426, 437.
In Mimmack’s Case, 97 U. S., 426, 437, it is said:
“Prior to the act of the 13th of July, 1866, the President could dismiss an officer in the military or naval service without the concurrence of the Senate.”
And in Blake’s Case, 103 U. S., 227, 231, the court say:
“From the organization of the Government under the present Constitution to the commencement of the recent war for the suppression of the rebellion, the power of the President, in the absence of statutory regulations, to dismiss from the service an officer of the Army or Navy was not questioned in any adjudged case or by any department of the Government.”
Equally positive are the cases in declaring that an officer may be displaced by the appointment of another in his place *401 by the President, by and with the advice and consent of the Senate. Blake Case, supra; McElrath Case, 102 U. S., 426, 438; Keyes Case, 109 U. S., 336; Mullan Case, 140 U. S., 240.
Assuming that the effect of the appointment and confirmation of Col. Smith was to displace the plaintiff, the principle just stated would dispose of this case, except possibly for the short period elapsing between the date of the order of dismissal and the taking effect of the new appointment.
To dispose of the entire claim, however, it becomes necessary to determine whether section 1230 furnishes any aid to the plaintiff. We have not been referred to any case where this section, or the act of March 3, 1865, 13'Stat., 489, from which it was taken, has been construed. The Newton Case, 18 C. Cls., 435, refers to it, but that case was decided°upon the point that, in any event, there had been too much delay in the attempted assertion of a claim by the plaintiff therein. It arose out of the exercise of an authority conferred by the act of 1870 on the President to drop from the rolls of the Army for desertion an officer absent from duty three months without leave; and while disposing of the case upon the ground mentioned, it is said (p. 444) to be the opinion of the court that the act of 1870 “ was intended to give to the President a fresh grant of power to be exercised at that time, independent of the acts of 1865 and 1866.”
This act of 1865 is referred to and quoted in the Blake Case, but no effect is there ascribed to it as bearing upon the President’s power of dismissal. There is a reference to it in section 2 of the act of June 22,1874,18 Stat., 191, but that section relates to the case of an officer of the Navy dismissed from the service and “restored” to the same; It does not appear how the restoration took place, and from the whole section it appears that the officer is not restored to office.
Section 1230 constitutes the revision of the 12th section of the act of March 3,1865,13 Stat., 489, which was as follows:
“And be it further enacted, That in case any officer of the military or naval service who may be hereafter dismissed by authority of the President shall make an application in writing for a trial, setting forth under oath that he has been wrongfully and unjustly dismissed, the President shall, as soon as the necessities of the public service may permit’ convene a court-martial to try such officer on the charges *402 on which he was dismissed. And if such court-martial shall not award dismissal or death as the. punishment of such officer, the order of dismissal shall be void. And if the court-martial aforesaid shall not be convened for the trial of such officer within six months from the presentation of his application for trial, the sentence of dismissal shall be void.”
The act of July 17, 1866, 14 Stat., 92, was construed in Blake's Case to be applicable only to cases of dismissal in time of peace. The plaintiff’s dismissal was in time of war and is unaffected by the act of 1866. The terms of the act of 1865 do not .confine it to time of peace. Its terms are general. It does not express any purpose to limit the President’s power to dismiss. On the contrary, it recognizes that power, and clearly imports, by its language, that there shall have been a dismissal before the officer can invoke its provisions. It does not speak of suspension, but does mention dismissal.
At the time of the enactment of this act, that of July 17, 1862, 12 Stat., 596, was in full force, and by the latter the President had been “ authorized and requested to dismiss and discharge from the military service” any officer whose dismissal, in his judgment, would promote the public service. Its force is to be found in the word “ requested.” Blake Case, 103 U. S., 227, 234.
It is not to be presumed, nor docs the language of the act indicate, that the power which Congress had thus in 1862, in time of war, requested the President to employ, was intended to be taken away from him or limited in 1865, the war then continuing. And the history of the enactment confirms this view.
The section under consideration was incorporated’ in the act by a committee of conference, in composition of differences between the two Houses of Congress (Cong. Globe, 38th Cong., 1378). A great deal of discussion upon different bills relative to dismissals of officers had occurred in the two Houses (Cong. Globe, 38th Cong., 133, 128, 36, 134r-135). Reporting the results of conference to the Senate, Senator Wilson stated that the House had adopted an amendment which required a trial upon charges before dismissal, that the committee of conference had modified the *403 amendment and agreed “ that the power to dismiss an officer shall not be taken away, but that if he makes application for a trial after his dismissal by the President he may have a court-martial.”
One Senator facetiously stated that the report was perfectly clear to him and meant that if the court-martial did not acquit the officer or shoot him “ the President may reinstate him, and after he is shot the reinstatement will not amount to very much!”
But while the language of the act justifies the conclusion that the power to dismiss an officer was not taken away, his reinstatement is not left to stand upon the action of a court-martial, as the Senator suggested, because the order of dismissal, it is declared, shall be void if a court-martial be not convened. Nor, indeed, does the act contemplate any execution of a sentence of a court-martial, if convened. It declares that the order of dismissal “ shall be void ” if the court-martial does not award dismissal or death, but implies that the President’s order shall stand if the court-martial’s sentence should call for severer punishment. In other words, the effect upon the order of dimissal is the' same whether the court-martial be not convened at all, or, being convened, award a different punishment than mere dismissal.
Manifestly, the language is not aptly chosen, and the meaning to be ascribed to the act is obscure. If it be assumed that it was not its intention to limit the power of dismissal (and its terms certainly import that it treats the dismissal as a fact), then the declaration that this order of dismissal shall be void, because of something subsequently occurring, could not be effective to restore the officer to his office. Let it once be admitted that the officer was dismissed from the service, it must follow that the effect of the order dismissing him was to sever his relations with the Army. As was said in Corson’s Case:
“ Thenceforward, and until, in some lawful way, again appointed, he was disconnected from that branch of the public service as completely as if he had never been an officer of the Army.”
The vacancy so created could only have been filled by a new and original appointment, to which, by the Constitution, *404 the advice and consent of the Senate was necessary. Corson Case, 114 U. S., 619, 622.
If it be said that the language of the act, though specific in its reference, does not imply that the officer is or can be dismissed by the President’s order, but means that the order has the effect of only suspending him from duty, then the act provides no method of determining the status of the officer if he fails to demand a court-martial; nor does it provide, if a court-martial be convened, for any execution of its award.
Assuming the officer is dismissed, and, therefore, severed from the service, the act presents the situation of a person out of the service being entitled to trial by court-martial upon his own request. Those subject to military law, as well as the jurisdiction of courts-martial, are defined by the Articles of War (39 Stat., 651). It is certainly the general rule that the military law is applicable to military persons alone, and that they cease to be amenable to it after their separation from the service. Davis Mil. Law, 46, 58, Art. V, Constitution.
We have pointed out some of the difficulties that would attend the act in its practical operation, and, since the restoration of an officer, who has been lawfully dismissed from his office, requires a new appointment, it would seem that the act, or section 1230, does not, in any event, affect the office that was held by the dismissed officer, or entitle him to its emoluments. But whether the purpose of this section is fully met by a court-martial, properly so-called, or a court of inquiry, or some other body authorized by an order of the President, whose findings can go to the officer’s record, or make him eligible to reappointment, or whether a broader meaning should be accorded to it, we need not determine, because our opinion is that section 1230 is superseded by the Articles of War enacted as part of the act of August 29,1916 (39 Stat., 651, 669). This act, in express terms, repeals all laws or parts of laws inconsistent with its provisions; and as it recognizes and declares, in the one hundred and eighteenth article, the power m the President to summarily dismiss an officer in time of war it must be accepted as the latest legis *405 lative expression on that subject, and this with other of its provisions renders section 1230 inoperative.
It results that as the plaintiff was dismissed from the Army in time of war by a valid order of the President, and as he has not been reappointed in the mode prescribed by law, he is not entitled to the pay allowed to an officer in the service for the period in question. His petition is therefore dismissed.
Gkaham, Judge; Hay, Judge; Downey, Judge; and Booth, Judge, concur.